Our next case on the docket today is Peeble v. Cota, 523-0695. I've got Mr. Jaleel here for the appellant and Mr. Marshall for the appellee. Are you ready to proceed today? Go right ahead. Mr. Marshall, honorable justices, may it please the court. My name is Omar Jaleel and I represent Blayton Cota who seeks reversal of this felony murder conviction. Mr. Cota seeks reversal based upon the state's failure to present evidence that established that he was guilty of felony murder beyond a reasonable doubt. The unrebutted evidence in this case showed that Mr. Cota was in the garage with two other co-defendants. One was his half-brother, another was a juvenile. The testimony from the juvenile who testified on behalf of the state was that they were inside the garage when the garage door opened up and the homeowner came inside the garage armed with a handgun. The homeowner ordered Blayton and his brother Jerome to get on their hands and knees with their hands in the air. They complied. During that period of time, Jerome told the juvenile who was hiding to exit from his hiding space because they had been caught. The juvenile exits. Mr. Brown turns his weapon in that direction and during that period of time, Blayton runs away from Mr. Brown trying to escape from the garage. As Blayton is running away from Mr. Brown, Mr. Brown turned his handgun towards Blayton and discharged his weapon at him. Blayton then went diving out of the garage and Jerome, his half-brother, began shooting. The shot that Jerome made ended up killing Mr. Brown. This case is different than all the other felony review cases where it involves a defendant and a civilian witness. In all of those situations, felony murder has been appropriate when the victim acts to instinctually defend himself. That's not the case here. The unreported evidence was that Mr. Brown was in a position of authority. He had Jerome and Blayton on their hands and knees with their hands in the air. The juvenile testified that the only weapon that he saw in the garage prior to the shooting occurring was Mr. Brown's weapon. That he never saw Blayton carrying a weapon with him. Mr. Brown's actions were not an instinctual reaction to protect himself. The unreported testimony was that Blayton was running away from him. The juvenile testified that Mr. Brown shot at Blayton's back. In addition, Mr. Brown's decision to use deadly force was not only not to protect himself, but it also wasn't to stop a forceful felony. The burglary at that time had been completed. As stated, Jerome and Blayton had given up. Jerome had told Logan, the juvenile, to exit because they had been caught. Instead of using deadly force to prevent a forceful felony, Mr. Brown used deadly force to prevent Mr. Blayton from running away from the garage. That is different from the cases that we have cited in our brief, where the death occurred as an instinctual reaction to protect himself. Again, that is simply just not what happened here. Mr. Brown fired at Blayton as he was running away. He shot towards his back. And Jerome, when he fired, the unrebutted evidence in the case was that Blayton had already exited the garage. You talk about quote-unquote unrebutted evidence. That was the evidence that was presented to the jury and the argument made to the jury that this unfortunate event occurred because the action of the victim and the jury rejected that assertion, correct? Respectfully, Your Honor, I don't know if that was the issue before the jury as to whether the steps in the felony murder process had stopped. Whether the proximate cause of the death of Mr. Brown was – that wasn't the issue. The issue was simply whether the felony murder occurred. There was no arguments really made that the steps in the casual relationship between the shooting and Mr. Brown's death, whether there was an intervening factor in there that broke that casual chain of events. That was never argued at trial. That was – so I don't believe that that was ever raised or a decision that the jury needed to make. And again, the shooting occurred here after Blayton was outside of the garage. Everybody who testified on that fact testified. The juvenile did as did Special Agent Burnley who testified that there was no evidence that Blayton was inside the garage when the shooting occurred and that it was more than plausible that Mr. Brown was the person that initially was the first person who discharged his weapon. The evidence showed that Mr. Brown's weapon was missing two rounds from a full magazine and that the weapon that Blayton had in his possession, it was a stolen firearm that when it was stolen it had four or five rounds inside of that weapon. But most importantly, what makes this case different from all the other felony review cases is the fact that Mr. Brown's decision to protect himself was not an instinctual decision to protect himself. He wasn't defending himself. He had all three of them under control. When Blayton ran away, he wasn't running towards Mr. Brown. He was running away from him. Blayton wasn't a threat to Mr. Brown as he was running away from him. Mr. Brown shot at Blayton's back, which shows that this was not a decision to protect himself. This was a decision, frankly, to kill Blayton. And based upon that, that broke the casual chain of events between a felony and murder in this case. And for those reasons, we respectfully ask that your honors reverse Blayton's conviction for felony murder. Any questions? No questions. Thank you. You have, hopefully, your time for rebuttal. Morning, your honors. May it please the court. Mr. Jaleel. Mr. Brown's use of force was statutorily authorized under the circumstances. Absolutely was an understandable and instinctual response to what happened. I'm not sure how Mr. Cota could have exited the garage without running to Mr. Brown. He didn't know what the heck was going on. We don't know where that shot landed. It could have been a warning shot. We do know, as the state argued below, state the obvious, if they had truly surrendered, we wouldn't be here. And I think they just got the jump on the poor guy. And the forcible felony was not over until he reached their grandfather's house. So everything that happened between then, he was on the hook for. These arguments were substantially similar to the ones that were made to the jury. They didn't accept them. Given the deferential standard of review and the overwhelming evidence of guilt, I just ask that you affirm the defendant's conviction. Is there any questions? Thank you, your honors. Mr. Jaleel, you have your rebuttal. Very good, your honor. How do we know that Blayton was running away from him, Mr. Brown, was based upon the juvenile's testimony, who specifically testified that Blayton was running in the opposite direction of Mr. Brown, and that Mr. Brown fired at him. And Ms. fired at Blayton and at his back. The evidence was clear on that fact. And then finally, the decision of Jerome to shoot was not in any way to aid Blayton's escape from the garage. The evidence in this case was that Mr. Brown had fired and Blayton was already out of the garage by the time that Mr. Brown turned towards Jerome with his firearm. And additionally, Special Agent Greenlee also testified that there was no evidence that Blayton was inside of the garage at the time that the shooting occurred. So for all of those reasons, and the reasons stated in our brief, we respectfully ask that this honorable court reverse Blayton's conviction for felony murder. Why does it matter whether or not the defendant was inside the garage or outside the garage? If he had been a lookout standing outside as a lookout and never even entered the garage, he could still be held accountable under felony murder. So why does it matter if he was running away or outside the garage or whatever? Well, I think the reason, respectfully, Your Honor, that I believe that it does matter is because there can't be an argument made that Jerome was shooting, began shooting to aid in Blayton's escape. Because Blayton had already left the garage at that point. And in the other trial testimony from Jerome's case, it was Jerome testified that he thought that Blayton had been shot and that he saw him go down. And that's when he started shooting. So that's the reason why I think it's relevant in this case, Your Honor. In normal felony murder cases, you're absolutely 100% right. It wouldn't matter if he was standing outside as a lookout. But that's not what the situation here was. That Blayton, Jerome, and Logan had given up on the situation. Jerome had told the juvenile to exit his hiding spot because they had been caught. And they, Jerome could have taken out the weapon right away. As soon as Mr. Brown entered the garage, he could have confronted him with violence. He could have confronted him with threatening behavior. But none of that happened. Instead of what happened was they gave up, but they got on their hands and knees and put their hands in the air, waiting for Mr. Brown to make his move. And unfortunately what that move was, was to introduce violence into the situation. But rather than remain, quote unquote, given up, when Mr. Brown turns around, he's shot by the co-defendant. So how is that giving up? Well, the shooting occurred after Blayton ran away. That's my point, is if they had truly given up, why didn't they just stay on their hands and knees down on the floor and let the authorities come rather than commit a felony murder? Well, Judge, there was no evidence that the police were ever called. Mr. Brown... Okay, that's regardless if I misspoke. Regardless that the police were on their way, the police would eventually show up. So how does that change the fact that this young man, rather than giving up, shoots this poor man that is, you know, defending his property? Well, Blayton's the one that wasn't the one that was shooting. I understand that. But he was part and parcel of this, if I remember correctly, two-day crime spree through Central Illinois. Breaking into houses, breaking into cars, stealing a gun, a stolen gun that shoots this poor man. So how is that giving up? Well, Your Honor, I believe it's more in the sense of what transpired beforehand. I read the transcript. I read the thing. I'm aware of what transpired. I understand, Judge. It is a terrible tragedy. And I'm not trying to make it less than what it is. I understand you're not. And if I'm not trying to be forceful to you, you're arguing for your client. I get that. It's more in the sense that these, all three were juveniles initially to begin with. And they're confronted with a person who's armed, who has their weapon. Well, Mr. Germain, I'm going to interrupt you there. If you're truly surrendering, he was armed. One of them were armed. A true surrender would be to drop your weapon. It's not a true surrender if you're not dropping your weapon. Well, I believe it's more in the sense that when Mr. Brown comes into the garage, he's armed with a weapon. Jerome is his right. Absolutely, Your Honor. Jerome is trying to make up some sob story as to why they're there. And Mr. Brown starts screaming at them, yelling at them, swearing at them. And they were frightened. I mean, they're children. They have a weapon pointed at them. And, yeah, would it have been absolutely smarter for them to not do anything? Absolutely. Would it have been smarter for them not to be in that garage in the very beginning? Absolutely. But the situation is in that when Mr. Brown confronts them, Blayton does run away. But it's running away from Mr. Brown. It's not running towards him. They didn't threaten him. They didn't fight with him. And that's the reason why I believe this case is different from the other felony murder cases where that's what happens. When the defendants are confronted, they fight back. They continue, they escalate the situation, and that's just not what happened here. And respectfully, where Mr. Cota is respectfully requesting that his felony murder conviction be reversed. Thank you, Counsel. Mr. Sheldon, anything? No, thank you. Thank you, Counsel. I believe we're going to take the matter under advisement. We will issue an order in due course.